UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA :

- v. - :

MICHAEL MESSINA, :

Defendant. :

- - - - - - - - - - - - - - - - - - - - x

**SEALED INDICTMENT**

22 Cr. ( ) 22 CRIM 212

**COUNT ONE**
**(Racketeering Conspiracy)**

The Grand Jury charges:

The Enterprise

1. At all times relevant to this Indictment, MICHAEL MESSINA, the defendant, and others known and unknown, were members and associates of an organized criminal enterprise known as the Genovese Organized Crime Family of La Cosa Nostra (the "Genovese Organized Crime Family"), whose members and associates engaged in crimes including making extortionate extensions of credit, financing extortionate extensions of credit, collecting extensions of credit by extortion, extortion, operating illegal gambling businesses, interstate transportation of wagering paraphernalia, and other offenses.

2. The Genovese Organized Crime Family, including its leadership, membership, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals

associated in fact, although not a legal entity ("the Enterprise"). The Enterprise was engaged in, and its activities affected, interstate and foreign commerce. The Enterprise was an organized criminal group that operated in the Southern District of New York and elsewhere and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

3. The Genovese Organized Crime Family was part of a nationwide criminal organization known by various names, including La Cosa Nostra ("LCN") and the "Mafia," which operated through entities known as "Families." The Genovese Organized Crime Family is one of five Families that operated in the New York City area, in addition to the Gambino Organized Crime Family of LCN, the Luchese Organized Crime Family of LCN, the Colombo Organized Crime Family of LCN, and the Bonanno Organized Crime Family of LCN.

4. LCN Families, including the Genovese Organized Crime Family, each operated through groups of individuals known as "crews" and "regimes," most of which were based in New York City. Each "crew" had as its leader a person known as a "Caporegime," "Capo," "Captain," or "Skipper," and consisted of "made" members, sometimes known as "Soldiers," "wiseguys," "friends of ours," and "good fellows." Soldiers were aided in their criminal endeavors by other trusted individuals, known as

"associates," who sometimes were referred to as "connected" or identified as "with" a Soldier or other member of the Family. Associates participated in the various activities of the crew and its members. In order for an associate to become a made member of the Family, the associate typically needed to demonstrate the ability to generate income for the Family, and/or that the associate was capable of committing acts of violence.

5. Each Capo was responsible for supervising the criminal activities of his crew, resolving disputes between and among members of the Family, resolving disputes between members of the Family and members of other Families and other criminal organizations, and providing Soldiers and associates with support and protection. In return, the Capo typically received a share of the illegal earnings of each of his crew's Soldiers and associates, which was sometimes referred to as "tribute."

6. Above the Capos were the highest-ranking members of each Family, commonly referred to as the "Administration." The head of each Family was known as the "Boss," who was ordinarily assisted by an "Underboss" and a "Consigliere," or counselor. The Boss, Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes between and among members of the Family, and resolving disputes between and among members of that Family and members of other criminal

organizations. The Administration of each Family was also responsible for overseeing the criminal activities of the Family's Capos, Soldiers, and associates, and was at times called upon to make decisions regarding those criminal endeavors.

7. At various times relevant to this Indictment, MICHAEL MESSINA, the defendant, was an Associate of and a Soldier in the Genovese Organized Crime Family.

Purposes of the Enterprise

8. The purposes of the Enterprise included the following:

a. Enriching the leaders, members, and associates of the Enterprise through, among other things, making extortionate extensions of credit, financing extortionate extensions of credit, collecting extensions of credit by extortion, extortion, operating illegal gambling businesses, and other crimes;

b. Preserving and augmenting the power, territory, and financial profits of the Enterprise through intimidation, violence, and threats of physical and economic harm; and

c. Keeping victims and citizens in fear of the Enterprise and its leaders, members, and associates by: (i) identifying the Enterprise, its members, and its associates with La Cosa Nostra or the "Mafia;" (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence.

Means and Methods of the Enterprise

9. Among the means and methods by which MICHAEL MESSINA, the defendant, and other Enterprise members and associates conducted and participated in the conduct of the affairs of the Enterprise were the following:

a. To protect and expand the Enterprise's business and criminal operations, members and associates of the Enterprise assaulted and threatened to assault persons who engaged in activity that jeopardized: (i) the power and criminal activities of the Enterprise; (ii) the power of leaders of the Enterprise and the status of its members; and (iii) the flow of criminal proceeds to members and associates of the Enterprise.

b. Members and associates of the Enterprise generated or attempted to generate income for the Enterprise through making extortionate extensions of credit, financing extortionate extensions of credit, collecting extensions of credit by extortion, extortion, operating illegal gambling businesses, and other offenses.

c. Members and associates of the Enterprise kept victims and citizens in fear of the Enterprise and its leaders, members, and associates by: (i) identifying the Enterprise, its members, and its associates with the "Mafia"; (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence.

d. Members and associates of the Enterprise at times engaged in criminal conduct or coordinated their criminal activities with leaders, members, and associates of other LCN Families, including by meeting with leaders, members, and associates of other LCN Families to resolve disputes over their criminal activities.

e. To avoid law enforcement scrutiny of the Enterprise's criminal activities, members and associates of the Enterprise conducted meetings surreptitiously, typically using coded language when speaking on telephones, and avoiding discussing LCN activities in locations they suspected to be monitored by law enforcement surveillance.

The Racketeering Conspiracy

10. From at least in or about 2007, up to and including at least in or about April 2022, in the Southern District of New York and elsewhere, MICHAEL MESSINA, the defendant, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 9 above, namely, the Genovese Organized Crime Family, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section § 1962(c), to wit, to conduct and participate, directly and indirectly, in the conduct

of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Sections 1961(1) and 1961(5) of Title 18, United States Code, consisting of

Multiple acts involving:

a. Extortion, chargeable under New York State Penal Law Sections 110.00 (attempt), 105.10 (conspiracy), and 155.40 (larceny by extortion);

b. Gambling, chargeable under New York State Penal Law Section 225.10 (gambling);

Multiple acts indictable under:

c. Title 18, United States Code, Section 893 (financing extortionate extensions of credit);

d. Title 18, United States Code, Section 892 (extortionate extensions of credit);

e. Title 18, United States Code, Section 894 (collection of extensions of credit through extortionate means);

f. Title 18, United States Code, Section 1951 (Hobbs Act extortion);

g. Title 18, United States Code, Section 1955 (operation of an illegal gambling business); and

h. Title 18, United States Code, Section 1084 (transmission of gambling information).

11. It was a part of the conspiracy that MICHAEL MESSINA,

the defendant, agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

(Title 18, United States Code, Section 1962(d).)

**FORFEITURE ALLEGATION**

12. As a result of committing the offense alleged in Count One of this Indictment, MICHAEL MESSINA, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963, any and all interests the defendant acquired or maintained in violation of Title 18, United States Code, Section 1962; any and all interests in, securities of, claims against, and property or contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and any and all property constituting and derived from proceeds obtained, directly and indirectly, from the racketeering activity alleged in Count One of this Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

**Substitute Assets Provision**

13. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 1963.)

[signature]
FOREPERSON

[signature]
DAMIAN WILLIAMS
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

**v.**

**MICHAEL MESSINA,**

**Defendant.**

**INDICTMENT**

22 Cr. ___ (___)

(18 U.S.C. § 1962(d).)

DAMIAN WILLIAMS
United States Attorney

Foreperson

Indictment & One warrant issued.

Under Seal.

USMJ Willis